UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| HARRY H. GALEKOVICH,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF VANCOUVER, et al.,<br><br>　　　　　　　Defendants. | CASE NO. 11-5736BHS<br><br>ORDER GRANTING DEFENDANT DAVE MILETICH'S MOTION TO DISMISS; ORDER DENYING WITH QUALIFICATION CERTAIN DEFENDANTS' MOTION TO DISMISS FOR INSUFFICIENCY OF PROCESS AND LACK OF PERSONAL JURISDICTION; AND VARIOUS RELATED ORDERS |
| HARRY H. GALEKOVICH, on his own behalf and as guardian ad litem for M.G., a minor,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF VANCOUVER, et al.,<br><br>　　　　　　　Defendants. | CASE NO. C11-5738BHS |

　　　This matter comes before the Court on various Defendants' motions to dismiss (Dkts. 7, 37); Plaintiff's motion to consider pending TRO motion in state court (Dkt. 16); Plaintiff's motion to compel the City of Vancouver to accept summons (Dkt. 29);

ORDER - 1

1  Plaintiff's and Defendants' motions for sanctions (Dkts. 31, 34, 47, 68); and Plaintiff's

2  motion for entry of default (Dkt. 73).  The Court has considered the pleadings filed in

3  support of, and in opposition to the motions, and the remainder of the file, and rules as

4  discussed below.

5                 **I.    PROCEDURAL AND FACTUAL BACKGROUND**

6  **A.    Procedural Background**

7        On August 25, 2011, Plaintiff Harry Galekovich filed two complaints in Clark

8  County Superior Court.  Dkt. 1 at 8 (C11-5736) (hereinafter, "GALEKOVICH I"); Dkt. 1

9  at 8 (C11-5738) (hereinafter, "GALEKOVICH II").  On September 15, 2011, Defendants

10  removed both cases to this Court.  Dkt. 1 (C11-5736); Dkt. 1 (C11-5738).

11        Within weeks of removal, the parties filed in succession nearly a dozen motions in

12  GALEKOVICH I and GALEKOVICH II, including a motion to consider a pending TRO

13  motion in state court, a motion for release of public records, a motion to compel

14  acceptance of summons, motions for sanctions, motions to dismiss, and motions for

15  default judgment.  To curb the serial filing, on December 5, 2011, the Court ordered the

16  parties not to file any further motions until the Court had ruled on the seven pending

17  motions.[1]  Dkt. 70.  On January 23, 2012, the Court consolidated GALEKOVICH I and

18  GALEKOVICH II in the interest of judicial economy.  Dkt. 79.[2]

19

---

20      [1] Despite that court order, on December 15, 2011, Plaintiff proceeded to file a motion for entry of default against all Defendants.  The Court admonishes Plaintiff for contravening that
21  order, but, for sake of completeness, will address that motion as part of this order.

22      [2] In GALEKOVICH I, Plaintiff filed suit in his individual capacity, and, in GALEKOVICH II, he filed suit on behalf of M.G. Dkt. 6 at 2. Both actions named essentially

**B.   Plaintiff's Claims**

This matter involves allegations that Defendants unlawfully excluded Plaintiff and his two-year-old grandson, M.G., from the Firstenburg Community Center ("FCC") swimming pool in Vancouver, Washington, in or around October 2009.  Dkt. 1 at 9-10; Dkt. 6 at 2.  The allegations flow from a FCC swimming pool rule, which states: "Non-swimmers and children under 7 years of age (with or without life jacket) must be within arm's reach of a parent and responsible adult at all times (hereinafter, the "Arm's Reach Rule").  Dkt. 1 at 10; Dkt. 7 at 2.  Defendant Dave Miletich is one of the defendants that Plaintiff claims instituted that policy.  Dkt. 1 at 48.  Plaintiff claims that, over the course of several visits to the FCC, he had objected to the policy and its interpretation, namely that his two-year-old grandson, M.G., was a swimmer and, therefore, that the Arm's Reach Rule did not apply.  *See* Dkt. 1 at 10-12.  The FCC disagreed, thereby requiring that M.G. have adult supervision around him in the pool.  Dkt. 1 at 11; Dkt. 7 at 3.

On October 3, 2009, Plaintiff claims that Defendant Kiersten Lushenko harassed and intimidated Plaintiff, prevented M.G. from swimming, and, among other things, grabbed his throat.  Dkt. 1 at 12.  Lushenko told police that Plaintiff was unsafe with M.G., and that she entered the pool after M.G., who could not swim, showed signs of distress and began to sink in the pool.  Dkt. 7 at 3; Dkt. 1 at 13-14.

The ensuing investigation produced several written reports that the Vancouver-Clark Parks and Recreation Department ("VCPRD") management, including Miletich,

---

the same principal defendants, except that GALEKOVICH I contained claims against five additional defendants.  Dkt. 1 at 8; Dkt. 6 at 2.

1 reviewed. Dkt. 7 at 3. Plaintiff does not claim that Miletich produced the reports, but
2 only that he forwarded the reports to Assistant City Attorney Terry Weiner and others
3 within the VCPRD management. Plaintiff contends that Weiner and Miletich decided to
4 exclude Plaintiff from district-owned swimming pools. Dkt. 7 at 3.

5      In effecting that exclusion, Plaintiff alleges that Defendants violated his
6 constitutional rights and state law. *See generally* Dkt. 1. Specifically, in his 49-page
7 complaint for injunctive relief and damages, Plaintiff alleges violations of the First,
8 Fourth, Eighth, and Fourteenth Amendments of the U.S. Constitution by way of 42
9 U.S.C. §§ 1981, 1983, and 1985 and *Monell v. Dept. of Social Servs. Of the City of New*
10 *York*, 436 U.S. 658 (1978); and violations of state law, including harassment, libel,
11 slander, negligent violation of Washington State child abuse statute (RCW 26.44.060),
12 failure to summon assistance (RCW 9A.36.160), assault, battery, kidnapping, outrage,
13 false imprisonment and negligent infliction of emotional distress. *Id.*

14 **C.   Defendants**

15      The complaint names the City of Vancouver and 16 individuals as defendants.
16 The individual defendants are: (1) Dave Miletich, VCPRD Assistant Manager; (2) Eric
17 Holms, Assistant City Manager; (3) Pete Mayer, Director; (4) Terry Weiner, Assistant
18 City Attorney; (5) Cory Wynn, FCC Pool Manager; (6) Andy Mead, Assistant FCC
19 Director; (7) James Fields, FCC Aquatics Supervisor; (8) Angela Brosius, FCC Director;
20 (9) Kiersten Lushenko, FCC Life Guard; (10) Tony Salado, FCC Facilities Assistant;
21 (11) Amil Haddad ; (12) Jim Azinger, Vancouver Police Department ("VPD") Officer;
22

1  (13) Ly Yong, VPD Officer; (14) Troy Price, VPD Sergeant; (15) George Delgado, VPD

2  Commander; and (16) Clifford Cook, VPD Chief of Police.  Dkt. 1. at 8-9.

## II.  DISCUSSION

**A.    Motion to Dismiss Standard**

Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).  A court accepts the factual allegations in the complaint as true for purposes of deciding the motion to dismiss. *Id*.  To survive a motion to dismiss, the complaint does not require detailed factual allegations but must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action. *Bell v. Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555-56 (internal citations omitted).  Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

**B.    Motion to Dismiss for Failure to State a Claim Against Miletich**

Defendant Miletich moves to dismiss under Fed. R. Civ. P. 12(b)(6) on grounds that any allegations concerning Miletich in his personal capacity are "legal conclusions not entitled to the presumption of truth."  Dkt. 7 at 2.  Miletich further argues that any allegations concerning him in his official capacity, as an employee of the City of Vancouver, are redundant of those alleged against the City of Vancouver. *Id*.

1       The Court agrees.  The complaint is largely unclear on what claims Plaintiff has
2   asserted against Miletich in his personal capacity.  It appears that the crux of Plaintiff's
3   complaint with respect to Miletich is that Miletich and others reviewed incident reports
4   and "approved ratified or tacitly authorized actions, statements, and reports provided by
5   defendants Kiersten Lushenko and Tony Salado to police."  Dkt. 1 at 15-16.  The
6   complaint also charges that Miletich subjected Plaintiff to cruel and unusual punishment
7   in violation of the Eighth Amendment to the Constitution.  Dkt. 1 at 23.  The Court
8   dismisses Plaintiff's Eighth Amendment claim, purportedly brought by way of 42 U.S.C.
9   § 1983, for lack of supporting allegations.  Likewise, in scoping the complaint line-by-
10  line, the Court finds that Plaintiff attempts in vain to broadly implicate Miletich through
11  vague allegations that have inadequate nexus to the underlying claims.  Indeed, to the
12  extent that Plaintiff relies on the theory that Miletich "knew or should have known" that
13  the staff reports were false, the Court finds that Plaintiff's allegations regarding the
14  contents of the staff reports, and Miletich's review of those reports, do not cause alarm so
15  as to subject Miletich liable under a theory of supervisory liability.  Mere references to
16  tacit approval of allegedly fraudulent reports and conclusory statements regarding legal
17  violations are not enough.  *See Twombly*, 127 S. Ct. at 1965 (to survive a motion to
18  dismiss, the complaint must provide the grounds for entitlement to relief and not merely a
19  "formulaic recitation" of the elements of a cause of action").  More is required of the
20  Plaintiff, although given the nature of the allegations against Miletich, more may not be
21  possible.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (court must use its
22

1  "judicial experience and common sense" in evaluating a motion to dismiss).

2  Accordingly, the Court grants Miletich's motion to dismiss with prejudice.[3]

3  **C.     Motion to Dismiss for Insufficiency of Process**

4        Defendants Brosius, Wynn, Salado, Weiner, Mayer, Meade, and Holmes move to

5  dismiss the complaint on grounds that Plaintiff has failed to comply with Rule 4 and

6  effect proper service. Dkt. 37. With respect to Defendants Brosius, Wynn, and Salado

7  (collectively, the "FCC Defendants"), it appears that, on October 21, 2011, a process

8  server retained by Plaintiff attempted to effect service of process by delivering complaint

9  documents to a customer service representative working the front desk of the FCC.

10 Dkt. 37 at 2.[4] The FCC Defendants claim the customer service representative was not

11 authorized to accept service on their behalf. *Id*.

12       Likewise, with respect to Defendants Weiner, Mayer, Meade, and Holmes

13 (collectively, the "City Defendants"), it appears that, on October 24, 2011, the process

14 server attempted to effect service of process by delivering the complaint documents to

15 Jeanette Bader at the front desk of City Hall. *Id*. at 3. The City Defendants claim that

16 Bader was authorized to accept service of process on behalf of Eric Holmes only – and no

17 one else – and, therefore, at the least, service of process was ineffective as to Weiner,

---

19    [3] To the extent the allegations concern Miletich in his official capacity, the Court agrees
20 with the assertion that the City of Vancouver, which has filed a notice of appearance, is the real
party in interest. *See* Dkt. 26 at 3.

21    [4] During that FCC visit, the process server also attempted to serve Defendants Haddad and
Lushenko. Haddad and Lushenko purportedly are no longer current employees of the City of
Vancouver; are unrepresented by counsel; have no knowledge of the complaint; and, therefore,
22 did not join in the motion. Dkt. 37 at 2.

Mayer and Meade. *Id*. at 4.  Moreover, the FCC Defendants and City Defendants contend that the copies of the complaint delivered to them differ in some part from the original complaint that Plaintiff filed in September 2011.  *Id*.

As a general rule, proper service of a summons and complaint is a prerequisite to the court obtaining jurisdiction over a party.  *See Goettemoeller v. Twist*, 161 Wn. App. 103, 107 (2011).  The relevant service of process statute provides:

> Service made in the modes provided in this section shall be taken and held to be personal service. The summons shall be served by delivering a copy thereof, as follows:
>
> * * *
>
> (15) In all other cases, to the defendant personally, or by leaving a copy of the summons at the house of his or her usual abode with some person of suitable age and discretion then resident therein.
> (16) In lieu of service under subsection (15) of this section, where the person cannot with reasonable diligence be served as described, the summons may be served as provided in this subsection, and shall be deemed complete on the tenth day after the required mailing: By leaving a copy at his or her usual mailing address with a person of suitable age and discretion who is a resident, proprietor, or agent thereof, and by thereafter mailing a copy by first class mail, postage prepaid, to the person to be served at his or her usual mailing address. For the purposes of this subsection, "usual mailing address" shall not include a United States postal service post office box or the person's place of employment.

RCW 4.28.080 (15); *see also* Fed. R. Civ. P. 4(e)(1).  An individual defendant may *not* be served by leaving the summons and the complaint at his or her place of employment. *French v. Gabriel*, 57 Wn. App. 217, 225 (1990), *aff'd* 116 Wn.2d 584 (1991).[5]

---

[5] A 1996 amendment to RCWA 4.28.080 permitted service by leaving documents at the defendant's place of employment. The statute, however, was again amended in 1997, and the 1997 version no longer permits service in this manner. Thus, the 1997 version of RCW 4.28.080 returns to the view that prevailed prior to 1996 – that a defendant cannot be effectively served by

1       The plaintiff has the burden of producing an affidavit of service that on its face

2 shows that service was properly carried out.  *Goettemoeller*, 161 Wn. App. at 107; *see*

3 *also Kain v. Grant County*, 47 Wn. App. 15, 156 (1987) (Process servers only act by

4 information supplied by party requesting service; consequently, plaintiff bears ultimate

5 responsibility of ensuring that jurisdiction is acquired over defendant by specifically

6 directing service upon proper party or entity).

7       Here, the Court finds that service was improper on certain individual Defendants,

8 including Brosius, Wynn, Salado, Weiner, Mayer, and Meade.  Moreover, the Court finds

9 that the service was improper on all the foregoing Defendants and Holmes because the

10 complaint that Plaintiff attempted to serve was not the same complaint that he filed in

11 Court.  *See* Fed. R. Civ. P. 4(c)(1).  In this circumstance, Rule 4(m) instructs as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

15       The Court typically affords some latitude to pro se plaintiffs when civil rule

16 compliance is in question.  But compliance with service of process rules is mandatory; it

17 is not sufficient to simply claim that the individual Defendants are on notice of the

18 lawsuit.  Plaintiff has failed to provide proof that the above-mentioned Defendants have

19 been properly served pursuant to Rule 4.  Accordingly, the Court directs Plaintiff to

20 review and follow the Federal Rules of Civil Procedure and consummate proper service,

---

leaving documents with the defendant's receptionist, secretary, or other employee at the defendant's place of employment.

as required under Rule 4, before March 23, 2012, or show good cause on or before that date why Defendants have not been served within 120 days of filing his complaint. Failure to comply will result in dismissal of the lawsuit.

**D.     Motion to Compel City of Vancouver to Accept Summons
        for Certain Defendants**

Plaintiff requests that the Court order the City of Vancouver to accept summons for Officers Azinger, Yong, Price, Delgado, and Cook. Dkt. 29. The Court denies that request. Plaintiff has already served the City of Vancouver as a defendant, and it appears that Plaintiff further seeks to serve the foregoing officers in their personal capacity. For reasons discussed, the Federal Rules of Civil Procedure do not authorize service on individuals through their employer or other third part(ies). Nor do they require that the City Attorney provide a plaintiff with the addresses of city employees. Although the Court acknowledges that personal service on these individuals may entail certain costs, the Court cannot compel an (unauthorized) party to accept service on behalf of another party under any circumstance.

**E.     Motion for TRO in State Court**

Plaintiff previously filed a motion to move his pending and undecided motion for preliminary injunction to this Court, and, in so doing, attached all supporting documents that were originally filed in the state court. Dkt. 12. The Court denies that motion.

Rule 65(b) of the Federal Rules of Civil Procedure governs temporary restraining orders. The purpose of a TRO is "preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing [on the preliminary injunction

1  application], and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters &*
2  *Auto Truck Drivers*, 415 U.S. 423 (1974); *see also Reno Air Racing Ass'n v. McCord*,
3  452 F.3d 1126, 1130-31 (9th Cir. 2006). To obtain preliminary injunctive relief, the
4  moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of
5  irreparable harm to the moving party in the absence of preliminary relief; (3) that a
6  balance of equities tips in the favor of the moving party; and (4) that an injunction is in
7  the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 376 (2008).

8        Even assuming, without deciding, that Plaintiff could establish that
9  (1) irreparable harm would occur in the absence of preliminary relief; (2) the balance of
10 equities tipped in his favor; and (3) granting an injunction is in the public interest,
11 Plaintiff must also establish a likelihood of success on the merits. *Id*. Plaintiff's
12 complaint alleges various federal and state law violations against the City of Vancouver
13 and 16 individual defendants. What is missing from the complaint, however, and his
14 motion for TRO, is a connection between the causes of action and the facts he pleads, in
15 that he fails to show how defendants' alleged actions constitute, more likely than not,
16 violations of the laws alleged therein. Therefore, the Court concludes that Plaintiff has
17 failed to show a likelihood of success on the merits of his case.

18       Moreover, the Court finds that Plaintiff has not shown how he will be irreparably
19 harmed if injunction is not granted. Plaintiff admittedly has utilized other swimming
20 pools in and around the greater-Vancouver area, and there is no showing that exclusion
21 from FCC rises to the level of irreparable harm that warrants the relief sought. Likewise,
22

1  Plaintiff has not shown why an injunction is in the public interest, where Plaintiff's

2  claims involve incident-based allegations of a personal nature.

3  Plaintiff has not established that he is likely to succeed on the merits, that granting

4  the TRO is in the public interest, or that the balance of equities are tipped in his favor.

5  *See Winter*, 129 S. Ct. 376. Therefore, Plaintiff has not adequately met his burden to be

6  granted preliminary injunctive relief.

7  **F.     Motion for Entry of Default**

8  Plaintiff has moved for entry of default against various Defendants: Holmes,

9  Mayer, Weiner, Wynn, Mead, Fields, Brosius, Lushenko, Salado, Haddad, Azinger,

10 Yong, Price, Delgado, and Cook. Dkt. 73. As discussed, because Plaintiff has failed to

11 effect proper service on these Defendants under Rule 4, the Court denies Plaintiff's

12 motion for entry of default.

13 **G.     Motions for Sanctions**

14 There are multiple motions for sanctions before this Court. *See* Dkts. 31, 34, 47,

15 68. The Court denies all such motions at this time. In so doing, however, the Court

16 cautions the parties to comply with the Federal Rules of Civil Procedure and refrain from

17 filing unnecessary and vexatious motions or unwarranted opposition to motions, or

18 otherwise multiply or obstruct proceedings that unreasonably increase costs of litigation.

19                                    **III.   ORDER**

20 Therefore, it is hereby **ORDERED** that Defendant Miletich's motion to dismiss

21 for failure to state a claim is **GRANTED** (Dkt. 7); certain individual Defendants' motion

22 to dismiss for insufficiency of process and lack of personal jurisdiction is **DENIED** with

qualification (Dkt. 37); Plaintiff's TRO motion is **DENIED** (Dkt. 16); Plaintiff's motion to compel the City of Vancouver to accept summons on behalf of certain individual defendants is **DENIED** (Dkt. 29); Plaintiff's motion for entry of default is **DENIED** (Dkt. 73); and the parties' motions for sanctions are **DENIED** (Dkts. 31, 34, 47, 68).

Dated this 7th day of March, 2012.

BENJAMIN H. SETTLE
United States District Judge